**Estate of William P. BURKE, Respondent,**

v.

**Marion L. BURKE, Appellant.**

No. WD 55976.

Missouri Court of Appeals, Western District.

May 25, 1999.

George Pickett, Plattsburg, for Appellant.

Joseph Kinyoun Houts, St. Joseph, for Respondent.

HANNA, Judge.

Marion L. Burke appeals from an order of the probate court in Gentry County, approving the Report of Sale of Real Estate submitted by the personal representatives of William Burke's estate. Mr. Burke complains that the Report of Sale was not at a price and terms most advantageous to the estate and heirs, as required by § 473.513.3,[1] because he offered the estate a greater sum for the purchase of the real estate. We disagree and. therefore, affirm.

William P. Burke died testate in Gentry County on October 19, 1986. In his will, William Burke named his granddaughters, Martha Rainey and Margie Stafford, co-executrixes. Letters Testamentary were issued on November 6, 1986, appointing them as personal representatives of the estate. On January 9, 1987, the personal representatives filed an inventory of the estate listing approximately 281.31 acres of land in Gentry County as an asset.

In early 1994, Shane Stockton began leasing the farm from the heirs. In 1996, Stockton indicated that he wanted to purchase the property. Consequently, the personal representatives had the farm appraised by two independent appraisers who valued the property at $187,000 and $160,000. Personal representative Stafford then wrote a letter to the heirs informing them of the results of the appraisals, and inquiring of their interest in selling the real estate. In response, Burke indicated that he did not wish to sell the property.

In early 1998, Stockton informed the personal representatives that he was able to obtain financing in order to purchase the farm. The personal representatives scheduled a family meeting for February 18, 1998, to consider the matter. On February 14, 1998, Burke called Stafford and she informed him that there was going to be a family meeting on February 18, 1998, to discuss the sale of the property to Stockton. Burke told Stafford that he was very upset that the family was considering selling the farm. Burke did not, however, indicate that he wished to purchase the real estate from the estate. At the February 18th meeting, all of the heirs, except for Burke, agreed to sell the farm to Stockton for $170,000.[2] Burke did not attend the meeting nor did he call. On or around February 19, 1998, personal representative Rainey called Burke to inform him that the family had agreed to sell the farm to Stockton. Burke did not agree to the sale.

On February 25, 1998, the personal representatives filed a Petition for Order to Sell Real Estate with the probate court in Gentry County. On March 18, 1998, counsel for Burke contacted counsel for the estate by telephone, and advised him that Burke wished to purchase the farm for $171,000. Burke's attorney confirmed the offer in a letter dated March 19, 1998. On March 19, 1998, the Petition for Order to Sell Real Property was heard by the court. At the conclusion of the hearing, the court

---

1. All statutory references are to Missouri Revised Statutes 1994, unless otherwise noted.

2. William Burke's will left one-sixth of his estate to the appellant, Marion Burke.

issued its order to sell the farm at a private sale.

The personal representatives and Stockton entered into a contract for the sale of the farm for $170,000 on March 20, 1998. The Report of Sale was filed in the probate court on or about March 25, 1998. Burke filed Objections to the Report of Sale of Real Estate, and a hearing was held on May 14, 1998. On May 21, 1998, the court entered its order confirming the Report of Sale. Burke is appealing that order.

The threshold issue on appeal is whether the probate court erred in approving the sale of the farm for $170,000, when Burke later offered to purchase the farm for $171,000. Section 473.513, governs the court's approval of the sale of real estate while in an estate. It provides, in relevant part:

> Within ten days after making a sale the executor shall make a full report of his proceedings ... The court shall examine the report and if satisfied that the sale has been *at the price and terms most advantageous to the estate* and in all respects made in conformity with law and ought to be confirmed, shall approve the same ...

*Id.* (emphasis added).

Burke cites *Summers v. Correll,* for the proposition that § 473.513 requires that the court approve the highest offer, all other things being equal. 853 S.W.2d 397, 401 (Mo.App.1993)(stating that "[a]pproval may not be given if the court determines that the sale has not been made at the most advantageous price and terms"). But, the facts in *Summers* are not similar to the circumstances in the present case. *Summers* involved the issue of whether the probate division had jurisdiction to approve the sale of real estate after the death of the protectee. *Id.* at 400. Here, the relevant question is whether § 473.513 mandates that a court may not approve a sale of real estate for less than the higher offer.

Burke also refers us to *Black v. Stevens,* 599 S.W.2d 54 (Mo.App.1980). In *Black,* the probate court ordered the personal representatives of an estate to sell a particular piece of real estate. *Id.* at 56. As a result, the personal representatives entered into a contract for the sale of the real estate for the sum of $85,000. *Id.* Subsequently, another individual advised the attorney for the estate that he would pay approximately $4,000 more for the same land. *Id.* The personal representative petitioned the probate court for assistance and the probate court disapproved the contract representing the lower offer. *Id.* at 57. Affirming the probate court's exercise of discretion, this court held that it was not an abuse of discretion for the probate court to vacate its prior order. Specifically, the court stated:

> The probate court apparently considered the opportunity to increase the size of the estate to be just cause for vacation of its prior order of probate sale. We do not quarrel with this appraisal and find that the probate court acted within its statutory grant of authority over the estate when it declared the contract void.

*Id.*

In *Black,* the monetary difference in the two competing offers was significant – 4.7% of the total purchase price in the original contract. Here, the difference between Burke's offer and Stockton's offer constituted only 1.7% of the total purchase price. This difference would have resulted in a benefit of only $158.32 to each heir. Furthermore, here, the personal representatives, on behalf of all 5 heirs except Burke, requested that the court approve the sale of the property to Stockton.

■ A probate court has the authority to approve the sale of a particular piece of real estate provided the *price and terms* obtained are the most advantageous to the estate. § 473.513(3). In the present case, the probate court determined that Stockton's offer of $170,000 was the "most advantageous" offer. Even though there was

an offer for $1,000 more for the property, we will not dispute the probate court's decision because there was a factual basis for the exercise of the probate court's discretion to find the Stockton contract more advantageous.

Specifically, Stockton's offer to purchase the farm constituted a *bird in hand*, whereas, Burke's offer was still in its preliminary stage. The record also indicates that Stockton had been approved for a loan to finance the purchase of the property, and a contract for the sale of the farm was executed by the parties on March 20, 1998. Moreover, five out of six of the estate's heirs discussed and agreed to the sale of the farm to Stockton for $170,000. Burke, on the other hand, did not indicate that he wished to purchase the property until more than three weeks after the order of sale was issued by the probate court.

■ The probate court acted within its statutory grant of authority when it approved the order of sale to Stockton for $170,000.[3] Affirmed.

SMART, P.J., and LAURA DENVIR STITH, J., concur.

---

[3] In a related point, Burke contends that the personal representatives of the estate are fiduciaries, and as fiduciaries it is their responsibility to secure the highest and best price for the purchase of the property. *Trenton Trust Co. v. Western Surety Co.*, 599 S.W.2d 481, 497 (Mo. banc 1980). To do any less would constitute a breach of their obligation potentially subjecting them to removal. *Id.* Burke contends it was the obligation of the trial court to reject the lower bid, thus fostering and supporting the mandated obligation of the fiduciaries to their principals, the estate and its heirs. *Id.* For the same reasoning discussed above, this point is without merit.